**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KATRINA J. CARPENTER,

        Plaintiff,

vs.                                                             No. CV 10-0112 JB/WDS

STATE OF NEW MEXICO,
DEPARTMENT OF CORRECTIONS,
JOE R. WILLIAMS, ELONA CRUZ,
TIM LEMASTER, GAIL OLIVER, and
DANA ZASKODA

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss, filed

April 1, 2010 (Doc. 23).  The Court held a hearing on May 12, 2010.  The primary issues are:

(i) whether the Court should dismiss Plaintiff Katrina Carpenter's Title VII, 42 U.S.C. § 2000e, and

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 through § 634, discrimination

and retaliation claims against Defendants Joe Williams, Elona Cruz, Tim LeMaster, Gail Oliver, and

Dana Zaskoda because supervisors and other employees cannot be held personally liable under Title

VII or under the ADEA; (ii) whether the Court should equitably toll Plaintiff Katrina Carpenter's

untimely Equal Employment Opportunity Commission ("EEOC") charges; and (iii) whether Count

II of Carpenter's Complaint adequately states a retaliation claim pursuant to rule 8 of the Federal

Rules of Civil Procedure pleading standards.  Because the parties concede and the Court finds that

the individual Defendants may not be held personally liable under Title VII or the ADEA, and

because Carpenter has brought claims only under Title VII and the ADEA, the Court will dismiss

the claims in Count I and Count II asserted against Williams, Cruz, LeMaster, Oliver, and Zaskoda. Because the Court finds that Defendant State of New Mexico Department of Corrections ("NMCD") did not engage in active deception, Carpenter is not entitled to equitable tolling of her untimely EEOC charges.  The Court also finds that the Complaint, on its face, does not adequately plead a retaliation claim, and therefore the Court will dismiss Count II.  The Court, however, will grant Carpenter leave to amend the Complaint to assert a sufficient claim of Title VII retaliation and ADEA retaliation against NMCD.

## FACTUAL BACKGROUND

According to the allegations in the Complaint, on or about April 10, 2006, Carpenter began working for the NMCD in the Western New Mexico Corrections Facility ("WNMCF") in Grants, New Mexico.  See Complaint for Employment Discrimination and Retaliation on the Basis of Sex and Age Under 42 U.S.C. 1983 and Other Statutes ¶ 11, at 2, filed February 9, 2010 (Doc. 1) ("Complaint").  At WNMCF, Carpenter worked in the Education Bureau as a paralegal and maintained a small legal library.  See Complaint ¶ 12, at 2.  On or about March 11, 2008, Carpenter had a conversation with Steve Polutnik, a library aide, about the retirement of the librarian, and when the position would be posted.  See Complaint ¶ 13, at 2.  Polutnik told Carpenter that Zaskoda, who was in charge of the NMCD library system, had promised the librarian position to him.  See id. He also told Carpenter that Oliver, the Education Department Bureau Chief, had confirmed that the position was promised to Polutnik.  See id.  On May 27, 2008, Kerry Singleton, the Education Director at WNMCF, announced at a staff meeting that he was leaving and announced that Polutnik would be replacing the retiring librarian.  See Complaint ¶ 14, at 3.  After the staff meeting, Carpenter told Singleton that she was interested in applying for the librarian position and inquired why the position had not been posted for open recruitment.  See Complaint ¶ 15, at 3.  She also

asked how Polutnik could be given the position without a bachelor's degree -- a requirement Carpenter noted in a previous description of the librarian position she found on the computer network.  See Complaint ¶ 16, at 3.  Singleton told Carpenter that Polutnik had asked him if he would receive the librarian position, because he had another job offer pending, and that Singleton had confirmed with Oliver that Polutnik would take the WNMCF librarian position.  See Complaint ¶ 17, at 3.  On June 2, 2008, Carpenter sent an electronic mail message to Oliver inquiring when the librarian position would be posted, and that same day the position was posted within the NMCD Education Bureau.  See Complaint ¶¶ 18-19, at 3.  Carpenter alleges that "[t]he job description had been blatantly changed to meet Polutnik's qualifications."  Complaint ¶ 20, at 3.  Oliver and Vince Wiggins, the Legal Access Monitor, interviewed Carpenter for the librarian position on June 11, 2008.  See Complaint ¶ 21, at 3.  Carpenter wrote an electronic mail message to Wiggins on June 17, 2008, when she had not been notified of a decision.  See Complaint ¶ 22, at 4.

On June 23, 2008, Carpenter contacted the NMCD's Equal Employment Opportunity officer, Vivian Smith, to inquire about contract employees filing grievances, explaining the librarian-hiring situation.  See Complaint ¶ 23, at 4.  According to Carpenter, V. Smith declared that the hiring practice was not discrimination.  See Complaint ¶ 23, at 4.  On June 24, 2008, Carpenter sent an electronic mail message to Michelle Jaramillo, NMCD's Compliance Officer, inquiring about policies regarding how and when job descriptions are changed and whether a position may be promised to an individual before posting that the position is available.  See Complaint ¶ 24, at 4.  Jaramillo responded that there were no NMCD policies addressing her inquiries, but that according to information from the Human Relations department, job descriptions are usually based on what was used in the past, and NMCD conducts open recruitment for job openings, and does not promise positions before posting them.  See Complaint ¶ 25, at 4.  On June 25, 2008, Carpenter filed an

employee grievance.  See Complaint ¶ 26, at 4.  Williams, the Secretary of Corrections, and

LeMaster, the Assistant Secretary of Corrections in charge of operations, denied Carpenter's

grievance, and informed her that Polutnik was hired because of his library experience at WNMCF

and his experience with the recently implemented inventory database program called Destiny.

See Complaint ¶ 27, at 4.

## PROCEDURAL BACKGROUND

Carpenter filed her Complaint on February 9, 2010, alleging that, as a result of the

discriminatory acts of the Defendants, she has suffered harm in the form of lost wages and benefits

and suffered emotional distress.  See Complaint ¶¶ 29-30, at 4.  She alleges two claims against the

Defendants: (i) employment discrimination on the basis of her age and her sex; and (ii) retaliation

for filing her grievances.  See Complaint ¶¶ 32-38, at 5.  In her claim of discrimination, Carpenter

alleges that the Defendants discriminated against her "in the terms and conditions of her

employment on the basis of her sex and age in violation of the Title VII."  Complaint ¶ 33, at 5.  She

alleges that they discriminated against her by promising Polutnik the librarian position before

posting it and changed the job description after she inquired when it would be posted.

See Complaint ¶ 34, at 5.  In her retaliation claim, Carpenter alleges: "Plaintiff has been yelled [sic]

and degraded in staff meetings.  Plaintiff has been retaliated against since the filing for [sic] her

objections and grievances."  Complaint ¶¶ 37-38, at 5.

The Defendants moved to dismiss on April 1, 2010, arguing that Carpenter's discrimination

claims are untimely and her retaliation claim lacks sufficient factual detail to set forth a claim to

relief that is plausible on its face.  See Motion at 1.  The Defendants filed a memorandum in support

of their arguments in the motion.  See Memorandum in Support of Defendants' Motion to Dismiss,

filed April 1, 2010 (Doc. 24)("Memo.").  The Defendants argue that, although the Complaint

references 42 U.S.C. § 1983 in its title and in paragraph 1 of the Complaint, Carpenter does not allege any constitutional violations, but rather asserts claims only under Title VII and the ADEA. See Memo. at 1 n.1. The Defendants contend that there can be no personal individual liability under Title VII or the ADEA, and therefore the Court should dismiss the individual claims asserted against Williams, Cruz, LeMaster, Oliver, and Zaskoda. See Memo. at 1 n. 1. The Defendants argue that the Court should dismiss Carpenter's discrimination claims in Count I of the Complaint because Carpenter failed to timely exhaust her administrative remedies before bringing suit. See Memo. at 2. The Defendants contend that the actions that Carpenter alleges were discriminatory took place on June 17, 2008, and she did not filed her charges with the EEOC until October 30, 2009 -- 500 days later -- which was beyond the 300 day time limit for filing an action after an alleged discriminatory practice occurred. See Memo. at 4. The Defendants contend that the only act of discrimination alleged in the Complaint was the Defendants not hiring her for the librarian position, and, because the EEOC charges were untimely, the Defendants move for dismissal of the claim.

The Defendants also argue that Carpenter's retaliation claim -- two sentences stating: "Plaintiff has been yelled and degraded in staff meetings. Plaintiff has been retaliated against since the filing for her objections and grievances" -- fails under the standard for pleadings pursuant to rule 8 of the Federal Rules of Civil Procedure. Memo. at 6. The Defendants contend that Carpenter fails to allege in the Complaint the dates of any staff meetings where she was degraded or any individuals who yelled or degraded her. See Memo. at 6. The Defendants also argue that the Complaint fails to allege a retaliatory motive. See Memo. at 7.

In response, Carpenter concedes that her discrimination claim is untimely but she argues that the time limits should be equitably tolled. See Plaintiffs' [sic] Memorandum in Opposition to Defendant's Motion to Dismiss at 1, filed April 22, 2010 (Doc. 27)("Plaintiff's Response").

Carpenter contends that equitable tolling should apply to her discrimination claims because, when she spoke to NMCD EEO officer V. Smith she was told that she did not have a claim for discrimination and was not provided with sufficient guidance on filing an EEOC complaint. See Plaintiff's Response at 2.  Carpenter argues that this advice, or lack thereof, amounted to deception and that she was pro se at the time she filed her EEOC complaint, and thus equitable tolling should apply.  See Plaintiff's Response at 3.  In response to the Defendants' argument that her pleadings are insufficient to establish her retaliation claim, Carpenter argues that she is not required to provide detailed facts and evidence in the Complaint, and that the statement in paragraph 37 -- "Plaintiff has been yelled [sic] and degraded in staff meetings" -- is sufficient to satisfy rule 8.  Plaintiff's Response at 4.  She argues that an in-depth description and analysis of the ways in which the Defendants violated Title VII and the ADEA "would be far too extensive for a Complaint."  Plaintiff's Response at 4.  Carpenter's brief did not address the Defendants argument that the individual Defendants cannot be held liable under Title VII or the ADEA.

In reply, the Defendants argue that Carpenter has not alleged any active deception that would warrant the application of equitable tolling to save her untimely discrimination claims.  See Reply Brief in Support of Defendants' Motion to Dismiss at 1, filed May 4, 2010 (Doc. 29). The Defendants argue that, although V. Smith may have expressed her belief that Carpenter did not have a discrimination claim, this comment did not deter Carpenter from pursuing an internal grievance regarding the alleged discriminatory act.  See Reply at 3.  The Defendants also argue that the alleged failure of V. Smith to inform Carpenter of her right to file an EEOC charge does not provide a basis for equitable tolling, because an EEO officer does not have any affirmative duty to inform employees of their rights to file EEOC charges, nor does Carpenter's pro-se status at that time entitle her to equitable tolling.  See Reply at 3.  The Defendants note that Carpenter has not

alleged that she was incapable of navigating the EEOC filing process, nor was she precluded from contacting an attorney.  <u>See</u> Reply at 4.  The Defendants also argue that, with regards to the retaliation claim, Carpenter's nine-word allegation in paragraph 37 of the Complaint is insufficient to satisfy rule 8.  <u>See</u> Reply at 5.

At the hearing, Quentin Smith, the Defendants' attorney, argued that the vast majority of decisions from the United States Court of Appeals for the Tenth Circuit have not found sufficient grounds for applying equitable tolling to untimely discrimination claims.  <u>See</u> Transcript of Hearing at 3:13-4:4 (taken May 12, 2010)(Smith)("Tr.").[1]  Mr. Smith argued that there has been no allegations that the V. Smith told Carpenter the EEOC would not take her claim, told her not to file her claim, or did anything that impacted her ability to file a claim.  <u>See</u> Tr. at 6:4-13 (Court, Smith). Mr. Smith contended that Carpenter received the denial of her internal grievance from Williams well within the 300 days from the alleged discriminatory action on June 17, 2008, and that more than 300 days passed between the time that Williams issued his decision on the internal grievance and the time that Carpenter filed her EEOC charges.  <u>See</u> Tr. at 7:8-11 (Smith).  Mr. Smith argued that V. Smith's representation that Carpenter did not have a claim for discrimination did not rise to the level of active deception which prevented her from timely filing her EEOC charges. <u>See</u> Tr. at 10:7-10 (Smith).  Mr. Smith argued that the Tenth Circuit case law does not support Carpenter's argument that equitable tolling should apply solely because V. Smith did not go out of her way to give Carpenter a complaint form and instruct her on procedures. <u>See</u> Tr. at 10:10-12 (Smith).  Moreover, there are no allegations of fraud or deception in the Complaint.  <u>See</u> Tr. at 36:1-6 (Smith).  With regards to the retaliation claim, Mr. Smith argues that

---

[1] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the nine-word allegation in the Complaint has left him to speculate as to what protected activity Carpenter took for which she is being retaliated against, when the alleged yelling took place, who yelled at her, or what was said.  See Tr. at 14:23-15:23 (Smith).  He argues that Carpenter has failed to inform the Defendants of the grounds of the claim against them, the pleadings are insufficient, and the Court should dismiss Count II.  See Tr. at 16:2-7 (Smith).  Mr. Smith conceded that it may be unreasonable for the Court to find, as a matter of law, that yelling at an employee cannot establish a retaliation claim, but he argued that there are not enough facts in the Complaint to sufficiently establish a retaliation claim in this case.  See Tr. at 19:17-20:17 (Court, Smith).  Mr. Smith further argued that, based on Carpenter's response brief, which asserted no additional facts regarding the retaliation claim, it looks as if allowing Carpenter to amend would be futile.  See Tr. at 22:17-23:3 (Court, Smith).

Joshua Simms, Carpenter's attorney, conceded at the hearing that, without equitable tolling, Carpenter's discrimination claims are untimely.  See Tr. at 35:11-16 (Court, Simms).  He also conceded that, although the Complaint mentions 42 U.S.C. § 1983, Carpenter is not bringing a § 1983 claim.  See Tr. at 42:22-25 (Court, Simms).  Mr. Simms also conceded that Carpenter's claims in Count I and Count II -- Title VII and ADEA discrimination and retaliation claims -- can be brought only against the corporate employer, and not individual employees.  See Tr. at 43:4-12 (Court, Simms).  He argued, however, that equitable tolling should apply to the discrimination claim, because it is an EEO officer's responsibility to facilitate EEOC filings and because V. Smith told Carpenter that she did not think she had a claim, which Mr. Simms contended amounts to misleading Carpenter.  See Tr. at 33:9-15 (Simms).  Mr. Simms conceded, however, that he knows of no requirements stating that an EEO officer must give a person a complaint form and inform that individual how to file a complaint.  See Tr. at 34:5-14 (Court, Simms).  Mr. Simms argued that the

retaliation was in response to Carpenter making a discrimination claim.  <u>See</u> Tr. at 24:21-23 (Court, Simms).  Mr. Simms stated he does not know the date of the meeting in which someone yelled at Carpenter, but it was in 2009, and he also does not know who yelled at Carpenter.  <u>See</u> Tr. at 25-8-26:5 (Simms, Court).  Mr. Simms informed the Court that Carpenter is currently the librarian -- the position she initially sought in 2008.  <u>See</u> Tr. at 28:6-11 (Simms).

## STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief.  Under rule 12(b)(6), a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." <u>Mitchell v. King</u>, 537 F.2d 385, 386 (10th Cir. 1976)(citing <u>Jones v. Hopper</u>, 410 F.2d 1323 (10th Cir. 1969)).  When ruling on a motion to dismiss, the court must accept as true well-pleaded factual allegations, but also consider whether "they plausibly give rise to an entitlement to relief." <u>Barrett v. Orman</u>, No. 10-7000, 2010 U.S. App. LEXIS 7807, at *5 (10th Cir. Apr. 15, 2010)(quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009)).  It is not the court's role to weigh potential evidence that the parties might present a trial, but rather to determine whether the plaintiff's complaint states a legally sufficient claim upon which the court can grant relief.  <u>See</u> <u>Sutton v. Utah State Sch. for the Deaf & Blind</u>, 173 F.3d 1226, 1236 (10th Cir. 1999).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. at 1949 (internal alterations, citations, and quotations omitted).  <u>See</u> <u>Bixler v. Foster</u>, 596 F.3d

751, 756 (10th Cir. 2010)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")(quoting Ashcroft v. Iqbal, 129 S. Ct. at 1949).  But dismissal is not appropriate where the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. at 570.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (internal citation omitted).  "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).  "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 547)(alterations omitted).  "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 129 S. Ct. at 1949.  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (emphasis in original).  The court is not required to accept the conclusions of law or asserted application of law to the alleged facts.  See Hackford v. Babbitt, 14 F.3d 1457, 1465 (10th Cir. 1994); Olpin v. Ideal Nat'l Ins. Co., 419 F.2d 1250, 1255 (10th Cir. 1969).  Nor is the Court required to accept as true legal conclusions that are presented as factual allegations.  See Brooks v. Sauceda, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000)(citing

Papasan v. Allain, 478 U.S. 265, 286 (1986)).  In Bell Atl. Corp. v. Twombly, the Supreme Court of the United States noted that the complaint provided "no clue as to which of the four [regional phone companies] (much less their employees) supposedly agreed, or when and where the illicit agreement took place."  550 U.S. at 565 n.10.  The Supreme Court explained that "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin."  Id.

## LAW REGARDING EMPLOYMENT-DISCRIMINATION CASES

Title VII of the Civil Rights Act of 1964 prohibits an employer from "fail[ing] or refus[ing] to hire or … discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  The ADEA "prohibit[s] arbitrary age discrimination in employment," 29 U.S.C. § 621, and makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623. "Under long-standing [Tenth] [C]ircuit precedent, supervisors and other employees may not be held personally liable under Title VII."  Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1083 n.9 (10th Cir. 2007).  See Haynes v. Williams, 88 F.3d 898, 899 (10th Cir. 1996)("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").  Similarly, individual employees are not liable under the ADEA. See Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999).

### 1.      The 300-Day Filing Time Limit.

A plaintiff generally must exhaust his or her administrative remedies before pursuing a

Title VII or ADEA claims in federal court.  See Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993).

To exhaust administrative remedies, an individual claimant must: (i) timely file a charge of

discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice

of the right to sue.  See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,

165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. §§ 2000e-5(b), (c), (e), (f)(1).  To be timely, a

plaintiff must file the charge with the EEOC within 180 days or with a state agency within 300 days

of the complained-of conduct.  See Simms v. Okla. ex. rel. Dep't of Mental Health & Substance

Abuse Servs., 165 F.3d at 1327; Gunnell v. Utah Valley St. Coll., 152 F.3d 1253, 1260 n.3 (10th Cir.

1998); 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13 (1998).

In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court

held that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file

his charge within the appropriate time period -- 180 or 300 days -- set forth in

42 U.S.C. § 2000e-5(e)(1)." 536 U.S. at 121.  "Discrete acts such as termination, failure to promote,

denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each

retaliatory adverse employment decision constitutes a separate actionable unlawful employment

practice."  National R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and

quotations omitted).  The Supreme Court found that this rule applied to bar a plaintiff from suing

on claims for which no administrative remedy had been sought when those incidents complained

of occurred more than 300 days before the filing of the plaintiff's EEO complaint.

See 536 U.S. at 114.  In Duncan v. Manager, Dep't of Safety, City & Co. of Denver, 397 F.3d 1300

(10th Cir. 2005), the Tenth Circuit explained:

> Title VII requires a litigant to file a claim within 300 days of the alleged
> discriminatory conduct.  42 U.S.C. § 2000e-5(e)(1).  The very precision of this
> requirement -- not a year, not six months, not the state law statute of limitations for

> comparable causes of action -- bespeaks Congress's concern. Title VII is not
> intended to allow employees to dredge up old grievances; they must promptly report
> and take action on discriminatory acts when they occur.  Unlitigated bygones are
> bygones.

397 F.3d at 1308.

The 300-day filing requirement for Title VII claims also applies to ADEA claims.

See Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1309 (10th Cir. 2005)("To the extent that

the charge filing requirements of the ADEA and Title VII are similar, courts must construe them

consistently.").  In Oscar Mayer & Co. v. Evans, 441 U.S. 750 (1979), the Supreme Court stated:

> Since the ADEA and Title VII share a common purpose, the elimination
> of discrimination in the workplace, since the language of [the ADEA at
> 29 U.S.C. § 633(b) is almost in haec verba with [42 U.S.C. § 2000e-5(c) of
> Title VII], and since the legislative history of § [633(b)] indicates that its source was
> § [2000e-5(c)], we may properly conclude that Congress intended that the
> construction of § [633(b)] should follow that of § [2000e-5(c)].

441 U.S. at 756.  See Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1194 (10th Cir. 2004)(stating that

"the ADEA and Title VII have virtually identical requirements with respect to the filing of EEOC

charges"); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 395 n.11 (1982)(observing that, "when

Congress in 1978 revised the filing requirement of the [ADEA]," the revision "was modeled after

Title VII").

## 2.       Equitable Tolling of the 300-Day Time Limit.

"The requirement that a plaintiff file a timely civil action after the disposition of an

individual EEO complaint is not a jurisdictional requirement, but rather is subject to waiver,

estoppel, and equitable tolling."  Harms v. IRS, 321 F.3d 1001, 1006 (10th Cir. 2003).  "Equitable

exceptions, however, have been narrowly construed."  Id.  See Montoya v. Chao, 296 F.3d 952, 957

(10th Cir. 2002)(stating that "federal courts have typically extended equitable relief only

sparingly.").  The Tenth Circuit "has generally recognized equitable tolling of Title VII periods of

limitation only if circumstances rise to the level of active deception which might invoke the powers of equity to toll the limitations period." Montoya v. Chao, 296 F.3d at 957.  See Godwin v. Sw. Research Inst., 237 Fed. Appx. 306, 307 (10th Cir. 2007)("Our precedent requires that an ADEA plaintiff demonstrate 'active deception' on the part of an employer, the EEOC, or the court."); Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1269 n.2 (10th Cir. 1996)(noting  in a Title VII case that "extraordinary circumstances" are "necessary to justify equitable tolling under established Tenth Circuit precedent.").  "Equitable tolling may be appropriate where a plaintiff has been lulled into inaction by an employer's 'deliberate design . . . or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" Al-Ali v. Salt Lake Cmty. Coll., 269 Fed. Appx. 842, 847 (10th Cir. 2008)(quoting Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)).  Equitable tolling "is not warranted where an employee is aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose."  Bennett v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999)(citation omitted).  The decision whether to equitably toll the limitations period rests within the district court's sound discretion.  See Purrington v. Univ. of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993).

In Castaldo v. Denver Public Schools, 276 Fed. Appx. 839 (10th Cir. 2008), the Tenth Circuit found that the district court did not abuse its discretion when it chose not to apply equitable tolling to the plaintiff's EEOC charge when the plaintiff alleged: (i) that his employer did not post notices regarding the filing of EEOC charges; (ii) that he was too incapacitated by his shoulder injuries to file an EEOC charge; and (iii) he was proceeding pro se.  See 276 Fed. Appx. at 841.  The Tenth Circuit found no error in the district court's conclusion that the failure to post EEOC notices was not a sufficient justification for equitable tolling.  See 276 Fed. Appx. at 841.  See also

Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 347 (10th Cir. 1982)(holding that "the simple failure to post . . . notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge"). The district court noted that the plaintiff did not allege that his employer intended to actively deceive him by failing to post notices about filing EEOC charges. See Castaldo v. Denver Pub. Schs., 276 Fed. Appx. at 841. The Tenth Circuit also concluded that the statements in the plaintiff's EEOC charge revealed that it was not his alleged incapacity that prevented him from filing a timely charge, but rather the fact that he was unaware of his obligation to do so until he consulted an attorney. See 276 Fed. Appx. at 841. The Tenth Circuit found that "his ignorance of the filing requirement does not entitle him to equitable tolling." 276 Fed. Appx. at 841. Finally, the Tenth Circuit upheld the district court's finding that the plaintiff's pro-se status did not justify equitable tolling, because the plaintiff had the ability to contact an attorney but elected not to do so until well after the expiration of the 300-day filing period. See 276 Fed. Appx. at 842.

In Godwin v. Southwest Research Institute, the Tenth Circuit held that the district court did not abuse its discretion in refusing to employ equitable tolling when the plaintiff misaddressed his EEOC submission, which arrived forty-four days after the 300-day time limit had expired. See 237 Fed. Appx. at 307-08. In Baker v. Perfection Hy-Test, No. 95-6091, 1996 U.S. App. LEXIS 27, at *7 (10th Cir. Jan. 2, 1996), the Tenth Circuit held that there was no active deception sufficient to toll the 300-day deadline where the plant manager of the plaintiff's employer told the plaintiff, after his demotion, that "restructuring was happening 'all over the country,' that plaintiff 'couldn't sue,' [and] that he might try but he 'wouldn't get to first base.'" 1996 U.S. App. LEXIS 27, at *7. The Tenth Circuit found that the statements "at most expressed an opinion concerning plaintiff's likelihood of success." Id., at *7.

-15-

**LAW REGARDING RETALIATION CLAIMS**

"A claim of retaliation is a distinct allegation of an unlawful employment practice." Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d 1300, 1314 (10th Cir. 2005).  A Title VII plaintiff must "exhaust administrative remedies for each individual discriminatory or retaliatory act." Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).  To succeed on a claim of retaliation, a plaintiff must show: (i) she engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) there was a causal connection between the protected activity and the adverse action.  See O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001).  An adverse employment action "must be materially adverse to the employee's job status. . . .  The adverse action must amount to a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Meiners v. Univ. of Kansas, 359 F.3d 1222, 1230 (10th Cir. 2004) (internal quotations and citations omitted).  In Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d 1300 (10th Cir. 2005), the plaintiff alleged a series of acts that she stated were in retaliation for her use of the internal-affairs complaint process.  See 397 F.3d at 1314. These acts included the failure to receive backup, an angry outburst by a lieutenant during an internal affairs investigation, and her general ostracization by other officers.  See 397 F.3d at 1314. The Tenth Circuit found: "None of the actions alleged by Ms. Duncan before April 14, 1998 materially affected her employment status. These acts may have made her work environment unpleasant, but they are insufficient to support a retaliation claim."  397 F.3d at 1314.  The Tenth Circuit noted that the plaintiff had identified one act severe enough to be an adverse employment action to satisfy the second prong for retaliation -- she was transferred to the police academy in retaliation for filing her original EEOC charge; however, the Tenth Circuit found that she failed to

file a separate EEOC charge detailing the plausibly adverse action, and thus the district court properly dismissed her retaliation claim.  See 397 F.3d at 1314.

"[T]he absence of a reference to unlawful discrimination . . . can preclude a retaliation claim because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII."  Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188 (10th Cir. 2002).  See Pope v. ESA Serv's, Inc., 406 F.3d 1001, 1010 (8th Cir. 2005) (holding, in Title VII retaliation case, that an employee's comments about the absence of black managers did not constitute protected activity because employee failed to attribute the absence of managers to racial discrimination); Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 615 (8th Cir. 2003) (ADEA plaintiff's letter-writing campaign accusing employer of improper loan procedures was not protected activity because the letters were not written to oppose age discrimination); Barber v. CSX Distrib. Serv's., 68 F.3d 694, 701 (3d Cir. 1995)(employee's ADEA retaliation claim failed because employee's criticism of employer's selection of a less qualified, younger applicant for a job, without specifically complaining about age discrimination, did not constitute protected conduct).

## ANALYSIS

Carpenter's Complaint alleges that the NMCD, Williams, Cruz, LeMaster, Oliver, and Zaskoda discriminated against her on the basis of her age and sex when she was not selected as the librarian for WNMCF.  She also alleges that the Defendants retaliated against her for filing a grievance about the alleged discrimination.  The Defendants move to dismiss the Title VII and ADEA claims in Count I and Count II asserted against the individual supervisors and employees of the NMCD.  They also move to dismiss the discrimination claims as untimely and move to dismiss the retaliation claim for failure to adequately plead a cause of action for which relief can be granted.

-17-

I.    **THE COURT WILL DISMISS THE TITLE VII AND ADEA CLAIMS ASSERTED
      <u>AGAINST THE INDIVIDUAL EMPLOYEES</u>.**

Carpenter's Complaint asserts claims of discrimination and retaliation under Title VII and the ADEA against her employer -- the NMCD -- and against Williams, Cruz, LeMaster, Oliver, and Zaskoda, in their individual capacities. Individual employees and supervisors cannot be held liable for claims brought under Title VII and the ADEA. <u>See</u> <u>Williams v. W.D. Sports, N.M., Inc.,</u> 497 F.3d at 1083 n.9 ("Under long-standing [Tenth] [C]ircuit precedent, supervisors and other employees may not be held personally liable under Title VII." ); <u>Haynes v. Williams</u>, 88 F.3d at 899 ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."); <u>Butler v. City of Prairie Vill.</u>, 172 F.3d 736, 744 (10th Cir. 1999)(noting that there is no individual liability under the ADEA against employees). At the hearing, Mr. Simms conceded that Carpenter's claims under Title VII and the ADEA can be brought only against the corporate employer -- the NMCD -- and not against individual employees or supervisors. <u>See</u> Tr. at 43:4-12 (Court, Simms). The Court, therefore, will dismiss the claims in Counts I and II asserted against Williams, Cruz, LeMaster, Oliver, and Zaskoda, because they are not Carpenter's employer as defined in Title VII and the ADEA, and cannot be held personally liable for her claims of discrimination and retaliation.

II.   **THE COURT WILL NOT EQUITABLY TOLL CARPENTER'S UNTIMELY
      <u>DISCRIMINATION CLAIMS</u>.**

Title VII and the ADEA require a litigant to file a claim within 300 days of the alleged discriminatory conduct. <u>See</u> 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). <u>See</u> also <u>Duncan v. Manager, Dep't of Safety, City & Co. of Denver</u>, 397 F.3d at 1308 (stating that a plaintiff "must promptly report and take action on discriminatory acts when they occur. Unlitigated bygones are bygones."). Carpenter alleges the discriminatory act -- not being selected for the librarian position

at WNMCF -- took place on June 17, 2008.  She filed charges with the EEOC about the alleged

discrimination on October 30, 2009 -- 500 days later.  Carpenter concedes that her claims of sex

discrimination and age discrimination in Count I of her Complaint are untimely.  See Plaintiff's

Response at 1; Tr. at 35:11-16 (Court, Simms).  Carpenter argues, however, that equitable tolling

should apply to her discrimination claims because, when she spoke to V. Smith, the NMCD EEO

officer, she was told that she did not have a claim for discrimination, and because V. Smith did not

provide her sufficient guidance on filing an EEOC complaint.  Carpenter further argues that she was

pro se at the time she filed her EEOC complaint and thus equitable tolling should apply.

Equitable tolling applies where an employee "has been 'lulled into inaction by [a] past

employer, state or federal agencies, or the courts."  Hulsey v. Kmart, Inc., 43 F.3d at 557.  To

warrant tolling of a claim, a statements must "rise to the level of active deception."  43 F.3d at 557.

Carpenter argues that she is entitled to equitable tolling because V. Smith told her she did not

believe she had a claim for discrimination and because V. Smith did not offer her an EEOC

complaint.  Carpenter alleges that V. Smith's statement and failure to offer Carpenter guidance about

filing an EEOC charge amounted to active deception.

Carpenter's conversation with V. Smith did not deter her from filing an employee grievance

two days after they spoke.  V. Smith's statement regarding the likelihood of success of Carpenter's

claims did not amount to active deception.  See Baker v. Perfection Hy-Test, 1996 U.S. App. LEXIS

27, at *7 (holding that there was no active deception sufficient to toll the 300-day deadline where

the plant manager's statements regarding the plaintiff's discrimination claims "at most expressed

an opinion concerning plaintiff's likelihood of success").  V. Smith's statements did not lull

Carpenter into inaction, or prevent her from asserting her rights in some extraordinary way.

See Biester v. Midwest Health Servs., Inc., 77 F.3d at 1269 n.2 (noting that "extraordinary

circumstances" are "necessary to justify equitable tolling under established Tenth Circuit precedent."). Rather, Carpenter filed an internal grievance shortly after speaking with V. Smith. Carpenter has also failed to demonstrate that V. Smith had a duty to verbally inform Carpenter about EEOC procedures, nor has the Court found any indication of such an obligation. Accord Castaldo v. Denver Pub. Schs., 276 Fed. Appx. at 842 ("The district's alleged failure to post EEOC-approved notices is insufficient reason to invoke the doctrine of equitable tolling."). The Court concludes that V. Smith's actions did not rise to the level of active deception, nor did she "in some extraordinary way" prevent Carpenter from asserting her rights. Biester v. Midwest Health Servs., Inc., 77 F.3d at 1267.

Carpenter's argument that her status as a pro-se litigant should entitle her to equitable tolling is equally unavailing. The Tenth Circuit has previously upheld a district court's decisions to reject pro-se status as justification for equitable tolling. See Castaldo v. Denver Pub. Schs., 276 Fed. Appx. at 842 (concluding, where the district court found the plaintiff's pro-se status did not justify equitable tolling, "that the court did not abuse its discretion in refusing to apply equitable tolling on this basis."). See also Montoya v. Chao, 296 F.3d at 958 (holding that difficulties faced by all litigants are insufficient to justify equitable tolling); Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005)(explaining that pro-se litigants must comply with procedural rules that govern other litigants). Without a showing that V. Smith, or anyone else, intended to actively mislead Carpenter, her ignorance of the filing requirement does not entitle her to equitable tolling. See Castaldo v. Denver Pub. Schs., 276 Fed. Appx. at 841; Gatewood v. RRB, 88 F.3d 886, 890 (10th Cir. 1996)(rejecting suggestion that ignorance of the law warrants equitable tolling). Because the Court finds that equitable tolling is not justified in this case, Carpenter's discrimination claims are untimely, and the Court therefore dismisses Count I of Carpenter's Complaint.

III.    **CARPENTER HAS NOT SUFFICIENTLY PLED A RETALIATION CLAIM.**

Carpenter's Complaint, in Count II, states: "Plaintiff has been yelled [sic] and degraded in staff meetings.  Plaintiff has been retaliated against since the filing for her objections and grievances."  Complaint ¶¶ 37-38, at 5.  The factual allegations, which are incorporated into Count II, make no mention of any staff meetings, yelling, or retaliatory acts.  The Defendants have moved to dismiss Count II because it lacks sufficient factual detail to state a plausible claim for relief.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted" under rule 8(a)(2) of the Federal Rules of Civil Procedure.  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)(quotation marks and citation omitted), cert. denied, 130 S. Ct. 1142 (2010).  See Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'")(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A motion to dismiss requires that the Court determine, while accepting all facts pled in the Complaint as true and granting all reasonable inferences from the pleadings in favor of Carpenter, whether the Complaint states a cause of action for which relief can be granted.  See Park Univ. Enters.. Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006).  Carpenter must frame her Complaint "with enough factual matter (taken as true) to suggest that . . . she is entitled to relief."  Robbins v. Oklahoma, 519 F.3d at 1247.

The Tenth Circuit has determined that "plausibility," as the Supreme Court has used that term, refers to the scope of the allegations in a complaint, and "if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their

claims across the line from conceivable to plausible." <u>Robbins v. Oklahoma</u>, 519 F.3d at 1247. Carpenter's two statements -- "Plaintiff was yelled and degraded at staff meetings. Plaintiff has been retaliated against since the filing for her objections and grievances" -- are too general to satisfy the rule 8 pleading requirements. It is far from clear that yelling at and degrading Carpenter at a staff meeting is an adverse employment action. At the hearing, Mr. Smith conceded that it may be unreasonable for the Court to find, as a matter of law, that, in all circumstances, yelling at an employee cannot establish a retaliation claim. <u>See</u> Tr. at 19:17-20:17 (Court, Smith).[2] In any case, assuming, without deciding, that some yelling and degradation could, under some circumstances, constitute an adverse employment action, the Complaint does not give any content by which to judge whether the yelling and degradation at staff meetings was retaliation. The Complaint does not state when any alleged staff meetings occurred. It does not state who attended the staff meetings or who yelled at Carpenter. The Complaint on its face leaves the Defendants and the Court to speculate about the missing, necessary facts, and speculate as to who allegedly retaliated against Carpenter. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). In sum, the two sentences are not sufficient to put the NMCD on notice of the claims against it. <u>See</u> <u>Mann v. Boatright</u>, 477 F.3d 1140, 1148 (10th Cir. 2007)(noting that a claim could be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to provide a short and plain statement of the case sufficient to put the defendant on notice of the bases for the claims).

---

[2] In a footnote to the Defendants' Memorandum in Support of Defendants' Motion to Dismiss, the Defendants state: "Applying [the Tenth Circuit's] standards [for retaliation], it is difficult to imagine how Plaintiff's allegation of being yelled at during a staff meeting would be a materially adverse employment action that is consistent with unlawful retaliation." Memo. at 7 n.5.

Moreover, to establish a prima-facie claim of retaliation, Carpenter must show: (i) she engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) there was a causal connection between the protected activity and the adverse action. See O'Neal v. Ferguson Constr. Co., 237 F.3d at 1252.  An adverse employment action "must be materially adverse to the employee's job status. . . .  The adverse action must amount to a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Meiners v. Univ. of Kansas, 359 F.3d at 1230.  Carpenter states that she was yelled at and degraded in staff meetings, but does not state any facts about an adverse employment action because of the yelling or degradation.  See Duncan v. Manager, Dep't of Pub. Safety, 397 F.3d at 1314 (dismissing the plaintiff's retaliation claim, alleging that she was yelled at by her lieutenant and generally ostracized by other officers, because "[t]hese acts may have made her work environment unpleasant, but they are insufficient to support a retaliation claim."); Atwell v. Gabow, 311 Fed. Appx. 122, 124-25 (10th Cir. 2009)("Particularly, the complaint does not adequately allege facts establishing that [the defendant] took an action that a reasonable employee would regard as materially adverse. Thus, the claim was properly subject to dismissal under Rule 12(b)(6).").  While yelling at and degrading an employee at a staff meeting might, under some circumstances, constitute an adverse employment action, the Complaint, as pled, does not plausibly allege an adverse employment action under Tenth Circuit law.

Carpenter has not framed her Complaint with enough factual matter, when taken as true, to suggest that she is entitled to relief for retaliation under Title VII or the ADEA. See Robbins v. Oklahoma, 519 F.3d at 1247.  Because Carpenter's pleadings on her retaliation claim are deficient on the face of the Complaint, the Court will dismiss Count II.  The Court will,

however, grant Carpenter leave to amend her Complaint to cure her deficient retaliation claim.

See Shell v. Am. Family Right Ass'n, No. 09-cv-0309, 2010 U.S. Dist. LEXIS 32140, at 46 n.19

(10th Cir. Mar. 31, 2010)("Normally, the Court affords a plaintiff an opportunity to amend the

complaint to cure any pleading deficiencies.").   While the Defendants contend that allowing

Carpenter to amend would be futile, the Court cannot reach that conclusion on the record before the

Court.   Moreover, the Defendants did not focus their argument in the memorandum, except in one

footnote, on whether Carpenter pled a sufficient adverse employment action, but rather argued that

she had not satisfied the standard for pleadings under Bell Atl. Corp. v. Twombly and Ashcroft v.

Iqbal.[3]   Accordingly, Carpenter will have ten days from the filing of this Order to file an amended

complaint to add sufficient factual detail to state a plausible claim for relief against NMCD for

retaliation.

_____

[3] At the hearing, Mr. Smith explained that he focused his motion on the deficient pleadings and not whether Carpenter had stated a claim for retaliation:

> COURT: Isn't the real question whether yelling at somebody in this context . . . is going to be an adverse employment action?  And I guess the second argument you have is the timing issue, that if it's that long after the discrimination claim is filed, is that going to be retaliation?  Is that going to be basically your two arguments?
>
> MR. SMITH: Well, I think we would be back to -- and I think Iqbal and Twombly would still apply because if those facts were alleged, is that a plausible claim for retaliation if we accept those facts as true. . . . The way I think that it would make sense to proceed is to find that the pleadings are deficient as they are and then the question becomes, should I grant plaintiff leave to file an Amended Complaint?  And, again, I would assert that would be a futile thing to do, but I'm certainly willing to brief that issue, as well, for the Court, and say, you know, whether what they're alleging states a claim under rule 12(b)(6).  What I focused on in the motion to dismiss is the Complaint before us.  . . .  But based on what I think she might say, I think we would still have a rule 12(b)(6) motion, but I'm happy to brief that issue if the Court is concerned as to whether plaintiff may be able to state a claim if they were allowed to amend the Complaint.

Tr. at 38:25 - 41:2 (Court, Smith).

**IT IS ORDERED** that Defendants' Motion to Dismiss is granted.  Plaintiff Katrina Carpenter has ten days to amend her complaint and cure the deficiencies, if she can, in Count II against Defendant State of New Mexico Department of Corrections.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Joshua R. Simms
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Quentin Smith
Gilkey & Stephenson, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*